Good morning everyone. We're here today for oral argument. We're going to begin with Appeal 25-1067 et al. This is Consolidated Chassis Management et al. versus Northland Insurance Company. We're going to begin with oral argument from the appellant, from Mr. Valentin. May it please the court, this case presents a simple issue of Illinois law. That issue is whether an insurer is entitled to select its defense attorney in an underlying court suit at its liability insurer's expense, which I'll refer to as conflict counsel, when the insurer reserved no right to deny coverage if a judgment is entered against the insured. The answer to the question is no, and the reason the answer is no is because there's no conflict between the interests of the insurance company and its insured. Therefore, the insurer is entitled to exercise its contractual right and duty to defend its issue with an attorney it hires, period. There's only one path to conflict counsel, and it doesn't exist here. There must be a conflict of interest between the insurer and its insured here at Northland and Appalachia. This report mistakenly relied on a purported conflict of interest between the Appalachians and their co-defendants, the owner and driver of the tractor-trailer hauling the Appalachian chassis at the time of the accident, as a basis for finding that Appalachians weren't entitled to conflict counsel and deprive Northland of its contractual right to select their defense attorney. This was error as a matter of law, and no case applying the law in law supports that finding. This court should therefore reverse the district court and enter judgment for Northland. Mr. Valentino, do you agree that Northland or someone had to hire separate attorneys for Consolidated and Midwest? Yes, correct. But your argument is that it was Northland's right to choose those attorneys, essentially. Yes, and that's because the Illinois decisions of this court, decisions of the Illinois state courts, consistently hold that insureds are entitled to conflict counsel only where the insurer has raised the defense coverage for a judgment in a reservation of rights. And the reservation that the insurer raises gives rise to an actual and serious conflict between the interest of the insurer and its insured. Speaking, Mr. Valentino, to Illinois Catholics law, you rely heavily on the Finley case. Finley doesn't cite Murphy, it cites pre-Murphy case law. Murphy seems to be more seminal precedent than Finley would be. Finley also seems to be distinguishable because title insurance is different than liability insurance. Explain to us why you think Finley should place a gloss on Murphy's holding with regard to the analysis of whether or not it was conflict. It was conflict. So, your honor, from my perspective, from Northwest's perspective, the holding in Murphy is not, if there's a contribution action filed between co-insureds, the insureds get conflict counsel. It goes way, way deeper than that. I mean, in the simplest terms, the insurer denied coverage to a T-painted insured. I can't remember what the driver's name was, the driver of the van involved in the accident. There was a question of whether he was acting as the employee of travelers named insured. And travelers denied coverage saying, you're not an employee of the name insured. You weren't acting as an employee. And because of that, you are not an insured. And so, you have a precise overlap of the issue in the underlying action with the basis of the insurer's coverage defense. And in the underlying action, true enough, the name insured, a school and its owner were diametrically opposed on the agency issue because they claimed the driver was not acting as their agent at the time of the accident. So, for sure, there was diametric opposition between them. But if you read the opinion carefully, I think it's clear. I think it's eminently clear, because the court says it a number of times, that it is the conflict with the insurer, the insurer and the insured, that travelers had an interest in the school prevailing in the underlying action, did not have an interest in providing a vigorous defense to Plansky, because they want him to not be the agent. So, the school wins, and he doesn't qualify as an insured. If Murphy is, if you're attempting to distinguish Murphy, isn't Finley even farther out in terms of the type of insurance, the nature of the claims it's making? Finley, it's also Court of Appeal's decision. It just strikes me that Finley's even farther out than Murphy. Well, the way I would look at, well, first off, if you look at the structure of the Finley opinion, the court talks about the conflict issue before it gets into the title of insurance issue. But to me, as I thought about that case, I thought, okay, so the title, it actually resembles an Illinois Appellate Court case that I can mention after I'm done talking about Finley, where the insurance is limited. There's not a, there's not what they call the full defense obligation. And okay, well, what does that do? That may eliminate the financial conflict between the, excuse me, that the limitation of the coverage doesn't, it just, excuse me, essentially, title insurance or the insurance involved in the, I better think of the name of this case. Not Siebert, but the case that followed at Village of Lombard. That was also a decision where there was an insuring agreement with limitations on that. So, okay, that may exacerbate the conflict between the insureds, but there's, I don't see where, you know, put it this way. If it gives rise to a conflict, I don't see where it gives rise to a conflict with the insurance company. No, this is what was agreed to. The duty to defend is shaped by what is agreed to in the contract. And if the contract says it's limited, then it says it's limited. It doesn't apply to all causes of action. And perhaps that mitigates some of the insurer-insured conflict, but we don't have an insurer-insured conflict in our case to begin with. So, if anything, those cases support the proposition that if there's no conflict between the insurer and the insured, there's no basis for conflict counsel. And Mr. Valencia, I mean, first, just a quick clarification. We keep using the phrase conflict counsel, but it strikes me that there could be two different types of conflict counsel. I mean, in some way, there was a conflict counsel here because Northland hired two separate sets of attorneys, right, for its insureds. So, what you really mean is conflict counsel chosen by the insured. Yes, that's how I understand it. And as far as the lawyers appointed to defend, each of the lawyers appointed to defend had only the interests of their particular clients to look out for, and Northland's interests were in rock step with each of the insured's interests to win the underlying action. So, I don't know if I would call the defense lawyers appointed conflict counsel. I would just call them separate counsel independent of one another, whose only mission was to protect the interests of the clients they were assigned to defend. So, here we have two insureds on the same side of the V, right? They were both co-defendants in the underlying court suit whose interests are at least partially adverse, right? Yes. Is it the same analysis if there are two insureds who are on the opposite sides of the V, if there's a plaintiff and a defendant that are both insured by the same insurance company? Or does the conflict attorney analysis differ for that type of insured versus insured? I just, I mean, our position is that absence of reservation of rights, it's immaterial. So long as there's no reservation of rights by the insurance company, the lawyer is the gatekeeper, the appointed defense counsel is the gatekeeper, is the captain of the ship in the defense. And he or she works with the insureds. And so long as everyone's on the same page, there's no problem. If something comes up, if there's a difference of opinion in the defense, then you may have an issue. That never came up here. And I'm sorry, I'm not sure I'm answering your question precisely. I understand. As to the reservation of rights, you know, in the brief, you know, in the reservation of rights era, in this case, you know, was your client obligated to pay for consolidated counsel during that brief time? No. Two reasons why. Number one, we have a right to investigate, to see, to determine whether they are insured, which is what we did. The record reflects that this was kind of a, this came to us in a roundabout way, through the owner of the chassis. It was not sued. And number two, the reason we reserve, we want to make sure you're insured. Why are they insured? Well, because they're, they're a chassis, what do they call themselves? A pool. And so they are the possessors of the chassis. Midwest borrowed the chassis when it's hauling it. And that's an objective fact that can't be affected by anything that happened in the underlying action. And therefore, because it can't be affected, it doesn't give rise to a conflict that would require the appointment of conflict counsel for that eight week period. So to reserve the remainder of your time. Yes. Thank you, Your Honor. Thank you, Mr. Balentino. We'll move now to argument from the appellee from Mr. Sullivan. Thank you. Good morning, Your Honor. May it please the court. My name is David Sullivan. I'm with my partner, John O'Malley. We represent the and the Cross Appelants Consolidated Chassis Management and Chicago, Ohio Consolidated Chassis Pool, which is a bit of a mouthful. So I'll just simply refer to them as plaintiffs as they were in the court below or consolidated. On three occasions, the district court found that a conflict of interest existed in this case, such that Northland was prevented from controlling Consolidated's defense in the underlying case, and instead was required to pay for Consolidated's independent counsel. The district court's reasoning was sound and followed controlling Illinois precedent, including Murphy v. Urso. This court should affirm the grant of judgment on the pleadings in favor of Consolidated on count one and the grant of summary judgment in favor of Consolidated on the breach of contract claim in count two. It's the case, Mr. Sullivan, that Murphy doesn't expressly discuss a scenario in which the insured hires two separate independent counsels. Murphy discussed not having a situation where two separate counsels retained by the same insurer. But in the case here, we have two sets of insureds who are in diametric opposition to one another in how the underlying case must be defended. And because of that, there is an ethical conflict under rule 1.7 of the rules of professional responsibility. Here, we have one theory of defense put forth by Midwest and Mr. Lambert, that we were going to blame the plaintiff for this accident. But for Consolidated, the best defense for them was to spread the blame across all of the defendants in all of the parties in the case. So not only the suing or blaming the plaintiff for their contributory negligence, or the counterclaim for contribution against the co-defendants was equally or more important from Consolidated standpoint. And it would have been impossible for an insured and retained attorney to file a counterclaim for contribution and essentially sue its own insurers. Sorry, I don't understand that. I mean, it would be impossible. Yes, perhaps. What your argument implies is that it would be impossible for the same attorneys to represent Consolidated and Midwest because of the inherent conflict there. But I don't understand why it would be impossible for separate attorneys representing Consolidated and Midwest to litigate adverse to each other. The reason why, Your Honor, is because the attorneys that are retained by the insurer, there is a potential for the ethical conflict there because of the nature of the relationship between retained counsel and the insurer, such that in situations where, for instance, we have covered and uncovered claims, again, you can't have... That's a situation where there's a clear conflict between the insurance company and its insurer, right? And here, there is also a clear conflict between the insurance company and its insurer because we have competing counterclaims and suing each other on the same side of the V. And it would be... The instance of covered and uncovered claims and having separate independent counsel to represent a party is the same reason why you have to have separate independent counsel here because the reasoning is the same. The conflict of interest by a retained attorney that is beholden to the insurance company cannot independently represent the interest of the insured. And it's the same reason here. He cannot or she cannot represent the interest of the insured because it would be impossible for Northland to be essentially suing its own insurers in this case. So I guess then the implication of your argument is that anytime there are contribution cross-claims between defendants who have the same insurer, then independent complex counsel chosen by each of those co-defendants is required. In this instance, it was most certainly required because we are faced with the position of or the possibility, very real possibility, of a verdict well in excess of limits. And so the theory of defense in the underlying case could not be consolidated simply to blame the plaintiff. The consolidated needed to be able to point the finger, develop evidence through the process of discovery and present evidence at trial that not just the plaintiff was liable, but the co-defendants as well. And in order to be, because of the limits issue and the significant damages in this case, if this were a case of two co-defendants and it's a minor fender bender case, there's no issue with the limits being in play here. No, we have two separate attorneys that can be retained by the insurer. And it really wouldn't necessarily directly matter whether or not they were separate and independent counsel or retained by the attorney, excuse me, retained by the insurer. But here, because of the possibility, significant possibility of a massive verdict outside of limits, it was absolutely imperative that consolidated, retain, and pursue a counterclaim for contribution against its own insurers. And so we have the figures for insurers. Million dollar policy settlement was for 975. The settlement was for 975. There was a demand for $4.2 million, which was well north. It was a case involving significant physical injuries as well as traumatic brain injury. It was apparent from the get-go that this was a case that was potentially well north of the limits of Northland's policy. And so it was in many cases, largely because of that, that it was driving the need to point the finger potentially at the co-defendants. So to follow up on Judge Tableson's question, that this is an excess case, that produces the need for the lawyer, or is a lawyer, the extra conflict counsel necessary regardless of whether it's an excess case? The, I would say, for certain, because it is an excess case, we definitely have the need for conflict counsel here, for sure. Whether or not it is in all instances, is, you know, potentially not, potentially there that you would need separate conflict counsel. I would refer to it as independent counsel. That's what the cases refer to it as. But certainly because of the limits issue here, that triggered the need for separate and independent counsel. Mr. Sullivan, the insurance contract in this case says that the insured must not assume any obligation or incur any expenses in this lawsuit without Northland's consent. Your client breached that provision, is that correct? No, I would not say that, Your Honor. We, for one thing, Northland started out this case by reserving its rights, and by notifying Consolidated that it would be entitled to recover its defense costs from Consolidated. That created a peppers conflict that entitled Consolidated to retain its own and to bill Northland for those fees. So you're saying Consolidated got consent for that expenditure? I'm sorry. So you're saying Consolidated obtained consent for that expenditure? No, Consolidated did not contain consent. Northland has refused adamantly throughout this whole case and has denied payment to Consolidated for its fees. That provision that Your Honor refers to exists in virtually every insurance policy, and the cases that come up in the course of these situations where an attorney or where a party is trying to sue to recover the fees that they had to incur for independent counsel, the cases do not say that the fact that they went out and retained their own counsel is a breach of the policy and denying them the right to recover those fees. If I may turn briefly to our cross appeal on the notion or the subject of the Section 155 damages here in this case. And before I do that, I just one point on Finley. I think Your Honor hit it on the head. Given that this is a title insurance case, we have a claim involving an easement to a piece of property. It is not a situation involving damages that potentially could exceed the policy. And in Finley case, the insureds were covered under two separate policies. Here we only have one policy that's in play. But turning to the Section 155 claim, whether an insurer violates Section 155 is a question of fact. And the pleadings in the underlying case adequately set forth facts which, if taken as true, which they must be on a motion for judgment and pleadings, show that Northland engaged in and unreasonable conduct in denying the benefits to consolidate it under the policy. Northland got corrections made by the district court. The factual errors on at least a couple occasions of district court in Northland had to move to reconsider to get those corrections made. Well, Your Honor, they could have moved to reconsider on that limited issue of correcting that one point. However, they used it as an opportunity to re-argue the entire issues in the motion below. They also filed serial motions for judgment on 54B, which were improper. The court found those to be improper. It wasn't as if, though, the motions were on the secondary and tertiary issue. The motions were going to the fact how many lawyers there are. And there were some mistakes made by the judge. There were a misstatement that was made twice, which was easily corrected on the motion to reconsider. However, that is beyond what was argued in either of those motions. Even the court below noted that and had finally sort of hit its limit with Northland's conduct in the case when Judge Maldonado pointed out that these were improper extensions of using the pretext of a correction to a clerical error in the statement of the court to essentially re-argue all of the points below. And so, I would suggest that this was continued vexatious conduct. So, not only in the case below, but then in the coverage action, the unreasonable and vexatious conduct continued all the way through an unnecessary motion for summary judgment when the court below had already said you've breached the contract, but then Northland insisted, no, we have to litigate that issue again. So, are we to look to Illinois law, or you're making an argument that this wasn't technical reconsideration, it was substantive reconsideration. Are we to look to Illinois law then to get the scope of when litigation like this is vexatious or not? I would say yes. Illinois law would and does address this conduct under the TKK case and the Cook case. The courts considered motions for reconsideration and unnecessary opposition to a motion as being a basis for finding grounds for sanctions under section 155. So, the pleadings below adequately identified a conflict of interest, but judgment on the pleadings was entered in favor of Northland on that issue. And so, we would suggest that that should be reversed, especially considering that the order that ultimately entered judgment on the pleadings for Northland was one to which the consolidated never had a chance to directly respond to on the topic of 155 sanctions. So, there wasn't a bona fide dispute here. Murphy v. Urso is very clear, and it is our position that the count two with regard to section 155 sanctions should be reversed and remanded further proceedings. Thank you. Thank you very much, Mr. Sullivan. Mr. Valentino, we'll turn back to you now for rebuttal argument. Okay. Boy, where to begin? Council cited one case, Murphy v. Urso. I will encourage the court to present our briefs time and time again in that case. The issue is insured versus insured conflict. Yes, there was diametric opposition between the insureds and the underlying action. That's not why there was conflict counsel. It was insured conflict. Take a look at the Clinton's case issued the same day distinguishing Murphy and talking again about the insured conflict. Fast forward to Elko in 1999, and you'll see the Illinois Supreme Court still talking about the only, the narrow exception to the rule that the insurer defends is where there's an insurer-insured conflict. There is no case that supports the position that the mere filing of contribution action between co-insureds creates a conflict for the insurance company. And I think we're noting that this court, and I believe the state courts as well, have said that contribution actions are within an insurer's duty to defend. Why? Because they're defensive. They're protecting the insurer. Let's dig a little deeper. The facts themselves that are presented here, you don't see a possibility that would exist of there being a conflict between the two parties on the same side. They might not have different interests. Sure. Sure. They may have. I mean, I think it's completely hyped up. I mean, they owe the trader that got rear-ended by a speedy plaintiff. But that's not the trigger. Trigger is the conflict between the insurance company and the insured. The fallacy of the Appellee's argument is this notion that somewhere there is a Mr. Northland, the Wizard of Northland, and he's controlling everything. And that's not how it works. Northland appointed independent lawyers for each set of its insurers. Those lawyers have ethical duties only to their clients. And yes, if Northland reserved rights, there could be a conflict. But Northland did not. So what is Northland's interest in the defense of the Appellees and the underlying action? Win. And what was their interest? Win. And if a contribution claim is filed, all right, what difference? Because the idea that that's the same thing as an agency issue is ludicrous. The way an underlying action is tried, the plaintiff is going to be trying to establish liability of the defendants. I mean, the notion that a co-defendant is going to go about trying to establish the liability of another co-defendant, I mean, that's kind of like, you know, in my opinion, I mean, that doesn't even make sense. But even if it did, there's a bright line, Judge. There's a bright line here. In terms of talking with the Conflict Counsel, and that bright line is, is there an insured-insured conflict? If not, do not ask, though. Do not get Conflict Counsel. Period. And I'm sorry, I know I've run out of time, and there are several other things I wanted to address. There's no ethical conflict for the Applebee's. Only mission, defend the Applebee's. Do what is necessary to win the underlying action. Period. And that's what Northland wants. There's no opportunity to shift facts in the underlying action, and Northland's not motivated. Let's go on the cheap. There's a million dollars. It's still a million dollars. There is no basis for what they are saying at all. Spread the blame. No, how about defend yourself? You know, I'm looking at some of these other notes I made, forgive me. You know, in terms of like how much exposure, you know. The accident was deemed to be the fault of the speeding plaintiff. I don't need to go into all the details of my book because I won't allow it, but let me say this on this excess verdict issue. Nonsense, okay? Nonsense. This court in the Wegman Post, it was a petition for re-hearing. This court issued a ruling in that case about why in that case the insurer had a conflict. I'm not going to go through it. It doesn't look anything like this case. I'm telling you that. I'm telling you, too, that there is a remedy. There is a remedy for an insurance company against an insurance company that does not discharge its duty to treat its insurers with the same fairness it treats itself, and that remedy is failure to sell. If Northland went afoul and just, oh, we don't care, we're going to gamble, okay, and a verdict happened, then the plaintiffs could argue Northland's on the hook for the whole thing because they, yeah, but that never happened to you. Point being, though, the remedy isn't conflict counsel. The remedy is breach of duty to sell, and there's a remedy-specific cause of action for that. I'm out of time. I thank you very much for your attention, and God save the Senate and the